**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Coleman ENGLAND, Jr., Defendant–Appellant.**

**No. 90–50155.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 1, 1992.

Decided Aug. 3, 1992.

Rose Reilly, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

David Z. Seide, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before D.W. NELSON and THOMPSON, Circuit Judges, and PANNER, District Judge.*

DAVID R. THOMPSON, Circuit Judge:

Appellant Coleman England, Jr. was convicted of federal narcotics violations after cocaine was discovered in two packages he deposited for mailing with the United States Postal Service. He moved to suppress evidence of the cocaine, contending the detention of his packages prior to their inspection constituted an unreasonable sei-

---

* The Honorable Owen M. Panner, United States District Court Judge for the District of Oregon, sitting by designation.

zure under the fourth amendment. England appeals the district court's denial of this motion. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

### FACTS

England deposited two packages in the United States mail for Express Mail delivery from Los Angeles, California to Birmingham, Alabama. The first package was mailed in October 1988. The second was mailed from a different postal station approximately ten months later. Postal inspectors at each station suspected England's packages contained narcotics.

England's first package was set aside and presented to a trained narcotics-sniffing dog. The dog alerted positively to the presence of narcotics. The package was then sent on its regularly scheduled flight to Alabama—the same flight it would have been on had no detention occurred. Pursuant to a valid search warrant, federal agents in Alabama opened the package when it arrived and confirmed that it contained cocaine.

England's second package was taken from the postal station where it had been deposited and transported to a nearby police station for a dog-sniff test. The test was positive. A search warrant was obtained, the package was opened, cocaine was discovered and England was later arrested. It is not disputed that had the sniff test been negative, the package could easily have been returned to the postal station and put on its regularly scheduled flight to Birmingham.

England was convicted of two counts of possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and two counts of intentionally using a communication facility to aid in that offense, in violation of 21 U.S.C. § 843(b). He was sentenced to sixty months in prison, plus four years of supervised release.

### DISCUSSION

■ England contends the detention of his packages prior to their inspection pursuant to the search warrants constituted an unreasonable seizure under the fourth amendment. He argues that the evidence of the cocaine discovered in these packages should therefore have been suppressed.

■ "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984) (footnote omitted). Absent such interference, no fourth amendment seizure will be found. *See, e.g., United States v. Beale*, 736 F.2d 1289, 1292 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984).

■ In *Beale*, we held that a dog-sniff of a defendant's unopened airline luggage did not materially interfere with his possessory interest, and, therefore, did not constitute a fourth amendment seizure. *Id.* The authorities in *Beale* never exerted physical control over Beale's luggage prior to the dog-sniff, as the postal inspectors did in this case by removing England's packages from their assigned holding areas in preparation for their inspection. This distinction, however, is of no consequence. It is the extent of the interference with the defendant's possessory interest in his property, not the physical movement of the property, that determines whether a seizure has occurred. *See United States v. Brown*, 884 F.2d 1309, 1311 (9th Cir.1989) (diversion of suitcases to cargo hold to conduct a search was not a seizure because "the brief detention of [the] bags would have in no way interfered with [the defendant's] travel or frustrated his expectations with respect to his luggage"), *cert. denied*, 493 U.S. 1025, 110 S.Ct. 732, 107 L.Ed.2d 750 (1990).

A person who deposits an item in the United States mail retains far less of an interest in the mailed item than does a person who checks his luggage for transport with a common carrier. *See* 18 U.S.C. § 1702 (barring anyone but the addressee from retrieving any letter, postal card, or package from an authorized depository); *United States v. Place*, 462 U.S. 696, 718 n. 5, 103 S.Ct. 2637, 2650 n. 5, 77 L.Ed.2d 110

(1983) (Brennan, J., concurring) (" 'the mere detention of mail not in [the defendant's] custody or control amounts to at most a minimal or technical interference with his person or effects, resulting in no personal deprivation at all' ") (quoting *United States v. Place*, 660 F.2d 44, 53 (2d Cir.1981), *aff'd*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)).

It is undisputed that the packages England mailed were not delayed by their detention. England's first package arrived on schedule in Alabama despite being detained, while the second package could easily have been placed on its regularly scheduled flight had no cocaine been discovered. *See United States v. Pono*, 746 F.Supp. 220, 222 (D.Me.1990) (detention of defendant's Express Mail package "did not intrude on his possessory interest to any cognizable extent" because the package would have been delivered on time had no narcotics been discovered).

England contends that *any* detention of mail constitutes a fourth amendment seizure. He relies on *United States v. Van Leeuwen*, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970), and *United States v. Aldaz*, 921 F.2d 227 (9th Cir.1990), *cert. denied*, ― U.S. ――, 111 S.Ct. 2802, 115 L.Ed.2d 975 (1991). Neither case supports such a broad contention.

In *Van Leeuwen*, postal inspectors detained two packages they believed contained illegally imported coins. Although the inspectors did not have probable cause to obtain a warrant, they did have a reasonable suspicion that the packages contained contraband. They detained the packages for nearly thirty hours before a search warrant was obtained.

The Court held that the inspectors' reasonable and articulable suspicions justified detaining the packages to allow a more thorough investigation. *Van Leeuwen*, 397 U.S. at 252, 90 S.Ct. at 1032. The Court stated that while "[t]heoretically ... detention of mail could at some point become an unreasonable seizure," the detention in this case was reasonable, despite the lack of probable cause, based solely on the inspectors' suspicions. *Id.*

*Van Leeuwen* is not on point. Unlike the present case, the delivery of Van Leeuwen's packages was substantially delayed by their detention. As a result, the primary issue before the Court was not whether the detention of Van Leeuwen's packages interfered with his interest in them, but whether this interference was justified despite the lack of probable cause.

Our recent decision in *Aldaz*, 921 F.2d 227, is also inapposite. Aldaz mailed four packages from a remote Alaskan village to an unspecified destination. A postal inspector suspected the packages contained narcotics and rerouted them to Anchorage, Alaska for a dog-sniff test. After the narcotics detection dog positively alerted to the packages, a search warrant was obtained, the packages were opened and marijuana was discovered. We concluded that rerouting the packages to Anchorage was justified based on the postal inspector's articulable suspicion that the packages contained narcotics. *Id.* at 229.

Although we noted that Aldaz's packages would not have been delayed, despite their detour to Anchorage, had no narcotics been discovered, *id.* at 231, we did not consider whether the detention of the packages actually constituted a seizure. Rather, we bypassed the seizure question because, even if a seizure had occurred, we concluded it was clearly justified by the postal inspector's reasonable and articulable suspicion that the packages contained narcotics. *Id.* Here, we need not consider whether the postal inspectors had reasonable and articulable suspicion to seize the packages before they obtained the search warrants, because until the packages were searched pursuant to those warrants, no seizure occurred.

AFFIRMED.