# United States Court of Appeals
### For the Eighth Circuit

_____

No. 14-3756

_____

United States of America

*Plaintiff - Appellee*

v.

Quincy Jackson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri

_____

Submitted: December 18, 2015
Filed: January 28, 2016

_____

Before MURPHY, BENTON, and KELLY, Circuit Judges.

_____

BENTON, Circuit Judge.

Quincy L. Jackson pled guilty to possessing marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D). In the plea agreement, Jackson

reserved the right to appeal the district court's[1] denial of his motion to suppress. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

On the evening of November 27, 2012, Jackson's small aircraft diverted from its original flight plan—Wichita, Kansas to Jacksonville, Illinois—and landed at the downtown airport in Kansas City. Homeland Security agents, finding this suspicious, alerted the Airport Police. They called for a dog trained to detect illegal drugs. This was her first field operation. She had a 97 percent success rate during training. She alerted positively to narcotics near both wings of Jackson's aircraft.

Drug Enforcement Agency agents learned Jackson was staying at a nearby hotel. Arriving there, about midnight, they knocked on the door seeking his consent to search. No one answered. An agent called Jackson's room. He answered, saying he would come to the door, but he didn't. After more calls to Jackson's cell phone and the room, agents smelled a strong odor emanating from the room, like Swisher Sweet cigars—commonly used to smoke marijuana. A different dog came to the hotel but did not alert.

At 2:00 a.m., an agent returned to the aircraft to draft an affidavit for a warrant. The agent learned Jackson had his pilot's license less than a month and had registered the plane five months earlier. The agent submitted the draft at about 8:00 a.m., but the prosecutor requested adding the drug dog's certification.

---

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri.

Also around 8:00 a.m., Jackson left his room. Two agents approached. He ran back into his room. The agents followed through the open door, handcuffed him, and read him his *Miranda* rights. They stayed with Jackson until check-out time, when they drove him to the Airport. An agent remained with him there. A search warrant issued at about 5:40 p.m. that evening. Agents searched the aircraft, finding two large boxes with 39 bags of marijuana, weighing 15.7 kilograms.

Jackson moved to suppress the marijuana. A magistrate judge recommended denying the motion, finding (1) his detention was immaterial because no evidence came from it, (2) the dog's positive alert provided probable cause to search the aircraft, (3) the warrant was not based on misleading information, and (4) Jackson was not the victim of wrongful profiling. The district court agreed (although noting concern about the length of detention). Jackson appeals, arguing there was no probable cause to search the aircraft, and the marijuana was the poisonous fruit of his detention.

## II.

"In an appeal from a district court's denial of a motion to suppress evidence, the court reviews factual findings for clear error, and questions of constitutional law *de novo*." ***United States v. Gordon***, 741 F.3d 872, 875 (8th Cir. 2013). "We may affirm the denial of a motion to suppress on any grounds supported by the record." ***United States v. Allen***, 705 F.3d 367, 369 (8th Cir. 2013).

Jackson attacks the probable cause to search his aircraft, claiming the drug dog was unreliable, and the affidavit had insufficient information about the dog's reliability. The test is "whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." ***Florida v. Harris***, 133 S.Ct. 1050, 1058 (2013). "[E]vidence of a dog's satisfactory performance in a

certification or training program can itself provide sufficient reason to trust his alert." *Id.* at 1057. An affidavit "need only state the dog has been trained and certified to detect drugs" and "need not give a detailed account of the dog's track record or education." *United States v. Lakoskey*, 462 F.3d 965, 978 (8th Cir. 2006), *quoting United States v. Sundby*, 186 F.3d 873, 876 (8th Cir. 1999).

The affidavit here gave sufficient facts about the dog's reliability. It stated that the dog was trained alongside her handler by an established company. Training lasted four weeks, including operations in buildings, lockers, luggage, automobiles, and open areas. The affidavit noted that the dog was certified, with a 97 percent accuracy rate in detecting illegal drugs.

The facts here meet the *Harris* standard. The positive alert by a reliable dog alone established probable cause. *See Harris*, 133 S.Ct. at 1057 ("If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search."). All the other facts support probable cause. Jackson was a licensed pilot for less than a month, purchasing the plane months before. Flying a non-commercial aircraft a long distance at night, he deviated from his flight plan—suspicious for a new pilot. His evasive behavior at the hotel buttresses the probable cause finding. *Cf. United States v. Massi*, 761 F.3d 512, 522-24 (5th Cir. 2014) (finding—where the dog did not alert—suspicious flight pattern, denial of consent to search airplane, and evasive and inconsistent answers about box on airplane did not show probable cause).

Jackson contends that his arrest in the hotel room and his subsequent detention awaiting the search warrant were illegal, making the marijuana in the aircraft the "poisonous fruit" of his detention. To the contrary, the marijuana in the aircraft was seized due to the warrant, not the arrest or detention. *See Wong Sun v. United States*, 371 U.S. 471, 487 (1963) (holding exclusionary rule inapplicable when evidence is

-4-

acquired through source independent of illegal seizure).  Jackson made no incriminating statements; no evidence was seized from him.  The warrant was based on information obtained before Jackson's arrest and detention.  *See* **United States v. Swope,** 542 F.3d 609, 613-14 (8th Cir. 2008) (warrant is independent source when based on evidence not obtained by unlawful act).

Jackson asserts that if he had not been arrested and detained, he would have left on the aircraft with the marijuana.  In *Carroll v. United States*, 267 U.S. 132, 153 (1925), the Court held that "an automobile *or other vehicle* may be searched" "where it is not practicable to secure a warrant." (emphasis added).  *See* **United States v. Nigro**, 727 F.2d 100, 106-07 (6th Cir. 1984) ("[S]everal courts of appeals have held that the automobile exception applies to aircraft.").  Because there was probable cause that the aircraft contained evidence of a crime, the plane could be held until the warrant issued.  *See* **Chambers v. Maroney**, 399 U.S. 42, 51-52 (1970) ("[W]e see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search.").  Jackson could not have simply left on the aircraft.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____